BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
RAYMOND E. PATRICCO, DISTRICT OF COLUMBIA BAR NO. 454792
MELISSA Y. LOU, DISTRICT OF COLUMBIA BAR NO. 1019069
ASSISTANTS UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JANET ROE,<br><br>    Defendant. | Case No.   1:17-cr-267-DCN<br><br>**RULE 11 PLEA AGREEMENT** |

Rev. August 2017 (General)

I.  **GUILTY PLEA**

A.  **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the defendant, the attorney for the defendant, and the government[1] agree that the defendant will waive indictment and plead guilty to count one of the Information, which charges the defendant with false statement to the Internal Revenue Service, in violation of 18 U.S.C. § 1001.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement. Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this agreement, the government, under Federal Rules of Criminal Procedure 11(c)(1)(B), will recommend a sentence at the low end of the guideline range as calculated by the court.

B.  **Oath.** The defendant will be placed under oath at the plea hearing. The government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

II. **WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL**

The defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offense(s) charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

without having that held against the defendant. If the court accepts the defendant's guilty plea, there will be no trial.

**III.    NATURE OF THE CHARGES**

    **A.    Elements of the Crime.** The elements of the crime of false statement to the Internal Revenue Service, in violation of 18 U.S.C. § 1001, as charged in count one, are as follows:

    1.    The defendant made a false statement in a matter within the jurisdiction of the Internal Revenue Service;

    2.    The defendant acted willfully; that is, the defendant acted deliberately and with knowledge both that the statement was untrue and that his or her conduct was unlawful; and

    3.    The statement was material to the activities or decisions of the Internal Revenue Service; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

    **B.    Factual Basis.** If this matter were to proceed to trial, the government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

    JANET ROE was a certified public accountant who worked for an accounting firm in Twin Falls, Idaho, through approximately 2009, after which she continued working as a certified public accountant in Twin Falls, Idaho.

    S.P. was a certified public accountant who worked for the same accounting firm in Twin Falls, Idaho.

    K.S. was a certified public accountant who worked for the same accounting firm in Twin Falls, Idaho.

    K.H. was an accountant who worked for the same accounting firm in Twin Falls, Idaho.

WDC and GM were Idaho companies with their principal places of business in Twin Falls, Idaho. G.W. was the owner of WDC and GM. At various times, J.M. was the bookkeeper and operations manager of WDC. At various times, WDC and GM were clients of the Twin Falls accounting firm, and in particular, JANET ROE, S.P., and K.S.

MX was a Montana Corporation with its principal place of business in Twin Falls, Idaho. G.A. was the owner of MX. At various times, MX was a client of the Twin Falls accounting firm and JANET ROE. Also, at various times, K.H. represented MX.

For tax year 2010, WDC had a tax liability of approximately $650,000. The tax liability arose from a change in accounting method that would allow the change to be reported over a four-year period (2007 through 2010) under IRS Section 481.

To evade the assessment and WDC's payment of that tax, JANET ROE, S.P., K.S., and K.H. devised a transaction whereby WDC and G.W. would execute an independent contractor consulting agreement, option to purchase agreement, and line of credit agreement and promissory note with MX, and its owner, G.A. The agreements were drafted by an attorney at the direction of S.P. in or about August 2010.

The independent contractor consulting agreement provided that, effective July 1, 2010, MX, through its owner, G.A., would provide "consultant services" regarding land development, construction, and transportation to WDC. In return, WDC would pay MX six monthly payments of $254,000, from July through December 2010, for a total of $1,524,000.

The line of credit agreement and promissory note provided that, effective July 1, 2010, MX would "loan" WDC a total of $1,476,000, in six monthly installments of $246,000 each, from July through December 2010. The line of credit agreement and promissory note further provided that WDC would pay monthly interest and repay the full principal by June 30, 2012.

The option to purchase agreement provided that, effective July 1, 2010 through June 30, 2020, WDC had the option to purchase MX and its shares of stock from G.A. In return, WDC would pay MX $72,000 by October 1, 2010, among other fees.

Notwithstanding the terms of the independent contractor consulting agreement, JANET ROE, S.P., K.S., K.H., G.W., and G.A. knew that MX, through its owner G.A., would not provide to WDC $1,524,000 in consulting services in 2010.

Notwithstanding the terms of the line of credit agreement and promissory note, JANET ROE, S.P., K.S., K.H., G.W., and G.A. knew that WDC would not repay to MX the principal of the $1,476,000 "loan" by 2012 as required by the agreement, or at any time.

From July through December 2010, pursuant to the independent contractor consulting agreement, and as instructed by JANET ROE and S.P., G.W. and WDC made six monthly $254,000 payments to MX, for a total of $1,524,000.

Within days of those payments, pursuant to the line of credit agreement and promissory note, and as instructed by JANET ROE and K.H., MX and G.A. made six monthly payments of $246,000 each back to WDC, for a total of $1,476,000.

This "round trip of cash" resulted in a net payment of $48,000 from WDC to MX in 2010. In addition, pursuant to the option to purchase agreement, WDC paid MX an additional $72,000 in 2010. In net total, WDC paid MX $120,000 in 2010, not including interest.

Knowing that MX, through its owner G.A., did not provide to WDC $1,524,000 in consulting services in 2010, S.P. and G.W. signed and filed WDC's 2010 corporate income tax return wherein WDC claimed a $1,523,996 deduction for a "management and consulting expense."

Knowing that WDC would not repay to MX the principal of the $1,476,000 "loan," S.P. and G.W. signed and filed WDC's 2010 corporate income tax return wherein WDC did not report the $1,476,000 in proceeds from MX as income.

As a result, WDC underreported its taxable income by $1,475,996 for 2010, resulting in a tax due and owing of $508,536. JANET ROE stipulates that $508,536 is the loss amount for the instant offense.

On or about December 16, 2013 – in response to audits by the Idaho State Tax Commission of G.A. and MX, initiated on December 12, 2012 and June 27, 2013, respectively – JANET ROE emailed G.A. and wrote that she had met with G.W. and S.P. to discuss the documents for which the Idaho State Tax Commission auditor was looking, and requested a call to discuss.

In or about January 2014, JANET ROE asked J.M. if J.M. had a "Word version" of the 2010 option to purchase agreement between WDC and MX.

On or about January 9, 2014, at approximately 11:45 a.m., JANET ROE emailed G.A. and wrote, "[a]ttached is the document that [G.W.'s] staff had on file related to the transaction back in 2009. Please look this over and I suggest that for future reference, we follow-up so that you have a signed copy for your files." Attached to the email was a falsified option to purchase agreement between GM and MX – virtually identical to the original option to purchase agreement between WDC and MX – backdated to December 31, 2009.

On or about January 9, 2014, at approximately 12:52 p.m., JANET ROE emailed G.W. and wrote, "[a]ttached is the unsigned agreement between you and [G.A.] that you requested. Your staff had located it on your system. Please look this over and then we should be sure that you and [G.A.] end up with a signed copy in your files." Attached to the email was the same falsified option to purchase agreement between GM and MX.

In or about January 2014, JANET ROE brought G.W. a hard-copy of the falsified and backdated option to purchase agreement between GM and MX and requested that G.W. sign it on behalf of GM. G.W. did.

On or about January 14, 2014, JANET ROE prepared and sent a letter to the Idaho State Tax Commission auditor attaching the falsified and backdated option to purchase agreement between GM and MX, signed by G.W. and G.A.

On or about July 18, 2014, following a meeting with G.A., JANET ROE emailed G.A., with subject "Minutes for your review." Attached to the email were falsified minutes of a purported MX shareholder meeting on December 31, 2009, wherein G.A. (as President of MX) and his wife (as Secretary of MX) reviewed and approved the alleged option to purchase agreement between GM and MX.

On or about July 29, 2014, JANET ROE submitted falsified minutes of (i) a purported MX shareholder meeting on January 28, 2009; (ii) a purported MX shareholder meeting on October 2, 2009; (iii) the purported MX shareholder meeting on December 31, 2009; (iv) and a purported MX shareholder meeting on December 31, 2010 – wherein the alleged GM and MX transaction was discussed – to the Idaho State Tax Commission auditor. The meeting minutes were signed by G.A. and his wife, but none of the meetings actually occurred.

On or about December 24, 2014, JANET ROE emailed S.P. and wrote, "[G.W.] received an inquiry from the Idaho State Tax commission dated 12/9/14 regarding the [MX] Transaction that occurred in 2009 & 2010. There has also been inquiry into the activities for [MX] by the same auditor. The same auditor has been conducting an audit of [G.A.]. Would you have time to meet with [G.W.] and I on Saturday to discuss the situation?"

On or about January 7, 2016, JANET ROE met with G.W. at his house. She (i) showed him a copy of the falsified and backdated option to purchase agreement between GM and MX, (ii)

**Plea Agreement**  6  Rev. August 2017 (General)

stated that it could not have come from her office and that she could lose her license, (iii) advised him not to talk to the agents of the Internal Revenue Service without a lawyer, and (iv) stated that she needed to get out of the accounting business.

On or about January 7, 2016, JANET ROE was interviewed by Special Agents of the Internal Revenue Service-Criminal Investigation. JANET ROE falsely stated that she did not prepare the falsified and backdated option to purchase agreement between GM and MX, and did not know why the agreement was changed from WDC to GM. In so doing, JANET ROE acted willfully; that is, she acted deliberately and with knowledge both that the statement was untrue and that her conduct was unlawful. Her false statements were material to the activities or decisions of the Internal Revenue Service; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

The parties agree that the victim in this case is the government.

## IV. SENTENCING FACTORS

**A.** **Penalties.** A violation of false statement to the Internal Revenue Service, in violation of 18 U.S.C. § 1001, as charged in count one, is punishable by:

    1.    a term of imprisonment of five years;

    2.    a term of supervised release of not more than three years;

    3.    a maximum fine of $250,000, and a special assessment of $100.

**B.** **Supervised Release.** The court may impose a period of supervised release. No agreement exists as to the length of supervised release.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

C. **Fines and Costs.** The court may impose a fine. The government agrees to recommend a fine of no more than $25,000. The court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

D. **Special Assessment.** The defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing. Payment will be made to:

> The United States District Court, Clerk's Office
> Federal Building and United States Courthouse
> 550 West Fort Street, Fourth Floor
> Boise, Idaho 83724.

E. **Restitution.** In addition to any forfeiture, fine, or costs imposed, the defendant agrees to pay restitution equal to the loss caused to any victim of the charged offense pursuant to any applicable statute. The defendant agrees that all monetary penalties imposed by the court, including restitution, will be due immediately and subject to immediate enforcement by the government. The defendant agrees that any payment schedule or plan set by the court is merely a minimum schedule of payments and neither the only method, nor a limitation on the methods, available to the government to enforce the judgment, unless the court specifically states otherwise. The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under the United States sentencing guidelines ("USSG") §3E1.1.

## V. UNITED STATES SENTENCING GUIDELINES

A. **Application of Sentencing Guidelines.** The court must consider the USSG in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The court is not a party to this agreement. The agreement does not bind the court's determination of the USSG range. The court will identify the factors that will determine the sentencing range under the USSG. While the court may take the defendant's cooperation, if any,

and the recommendations of the parties into account, the court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the court is not bound by this agreement, the parties agree to the recommendations and requests set forth below.

B. **Sentencing Guidelines Recommendations and Requests.**

1. **Government's Statements at Sentencing.** The government reserves the right to fully allocute at sentencing regarding any sentencing recommendation and to rely on any information in support of its recommendation regardless of whether the information is contained in the plea agreement or the presentence report.

2. **Acceptance of Responsibility.** If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a). The government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the government will withdraw or decline to make such a recommendation.

3. **Guidelines Calculations.** The parties agree that USSG Section 2B1.1 applies in this case, and under that section, jointly recommend the following calculations:

      a.    § 2B1.1(a)(2): Base Offense Level        6

      b.    § 2B1.1(b)(1)(D): More than $250,000 Loss    +12

   c. § 3E1.1(a): Acceptance of Responsibility  -3

   d. Adjusted Offense Level  = 15

The parties agree that enhancements under § 2B1.1(b)(10) (sophisticated means) and § 3C1.1 (obstructing or impeding the administration of justice) do not appy; the parties agree that § 3C1.1 does not apply because the conviction fully encompasses the obstructive conduct.

   4. **Amount of Loss.**  The parties agree that the amount of loss is $508,536.

   5. **Downward Departure or Variance Request by Defendant.**  Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government of the defendant's intent to seek a downward departure and the defendant's reasons and basis therefor, such notice to be provided not less than 21 days before the date set for sentencing.

## VI. COOPERATION

   A. **Truthful Information and Assistance.**  The defendant promises to provide truthful and complete information to the government and its investigative agencies, including testimony in legal and administrative proceedings, concerning the defendant's role and the roles of all others involved in offense-related behavior and other criminal activity. The defendant shall not attempt to protect anyone through false information or omission. The defendant will not falsely implicate anyone. Any intentional deviation from the truth in any of the defendant's testimony may result in prosecution for perjury and obstruction of justice. The defendant's duty under the terms of this agreement is to tell the truth whether or not it bolsters the government's case against any particular individual. The defendant specifically understands that this agreement is not contingent upon the conviction of any person or the forfeiture of any property.

   The defendant agrees to cooperate in good faith. This means the defendant will not only respond truthfully and completely to all questions asked but will also volunteer all information

that is reasonably related to subjects discussed. In other words, the defendant may not omit facts about crimes, participants, or defendant's involvement, and then claim not to have breached the agreement because the defendant was not specifically asked. This agreement is breached by any action or statement inconsistent with continued cooperation. Determination of a breach is solely within the discretion and determination of the attorney for the government. The defendant acknowledges that any breach of this cooperation agreement will absolve the government of any obligation for consideration based upon cooperation and will constitute grounds for the government to withdraw from this agreement. The defendant further acknowledges that the government's decision not to grant consideration for cooperation based on a determined breach will not constitute grounds for the defendant to withdraw from this agreement.

The defendant agrees to be available for interviews to prepare for testimony. If requested, the defendant will submit to government-administered polygraph examinations.

The defendant agrees to identify all property related to the defendant's crimes to which the defendant has pleaded guilty, and any relevant conduct. The defendant will identify the extent of any person's or entity's (including defendant's) interest in any such property. The defendant agrees to assist in the recovery and forfeiture of such property to the government.

**B.     Use of Information Against Defendant.** In exchange for the defendant's agreement, the government will not use new information the defendant provides (pursuant to this agreement) about the defendant's own criminal conduct. The government may reveal such information to the court. There shall be no restrictions, however, on the use of information: 1) previously known to law enforcement agencies; 2) revealed to law enforcement agencies by, or discoverable through, an independent source; or 3) in the event there is a breach of this agreement.

C.   **Substantial Assistance Determination.**  If the government determines, in good faith, that the defendant's cooperation amounts to "substantial assistance" in the investigation of others, the government will request that the court depart downward from the applicable sentencing range, pursuant to USSG § 5K1.1 and/or any mandatory minimum sentence, pursuant to 18 U.S.C. § 3553(e).  Pursuant to *United States v. Auld*, 321 F.3d 861 (9th Cir. 2002) and *United States v. Jackson*, 577 F.3d 1032 (9th Cir. 2009), the defendant understands that any motion for downward departure must be made as a reduction from the applicable guideline range or the statutory minimum sentence, whichever is greater, consistent with USSG § 5G1.1(b).  This will be the base offense level regardless of whether the government also makes a motion for a sentence below the statutory minimum sentence pursuant to 18 U.S.C. § 3553(e).  The defendant further understands that if the base offense level is based on a statutory minimum sentence, no other reductions in the offense level will be allowed, including acceptance of responsibility, other than the reduction for substantial assistance.  If the government determines the defendant has not provided substantial assistance, the government will not move for a downward departure.

The government's final decision whether to file motions pursuant to § 5K1.1 and/or 18 U.S.C. § 3553(e) will be made after evaluating the defendant's cooperation with regards to: 1) the significance and usefulness of the defendant's cooperation, 2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant, 3) the nature and extent of the defendant's assistance, 4) any injury suffered, or any danger or risk of injury to the defendant or defendant's family resulting from the defendant's cooperation, and 5) the timeliness of the defendant's cooperation.  The government's specific recommendation will turn on the facts of the case, the sentence that likely would have been imposed absent an agreement, and the extent and value of the cooperation provided.  The government's decision not to file such a motion will not constitute grounds for the defendant to withdraw from this agreement.

D.   **Defendant's Assumption of Risk.** The defendant agrees freely and voluntarily to cooperate with the government, knowing the possible consequences of cooperation. The defendant's attorney knows of the defendant's cooperation and agrees that the defendant shall enter into this agreement. The defendant hereby absolves the government, including its employees, from any liability associated with this cooperation.

## VII.  WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

A.   **Waiver:** In exchange for this agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution.

The defendant acknowledges that this waiver shall result in the dismissal of any direct appeal or collateral attack the defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this agreement and will allow the government to withdraw from the agreement and take other remedial action.

If the defendant believes the government has not fulfilled its obligations under this agreement, the defendant will object at the time of sentencing; further objections are waived.

B.   **Exceptions:**

   1.   **Direct Appeal:** Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal if one of the following unusual circumstances occurs:

   a.   the sentence imposed by the court exceeds the statutory maximum;

   b.   the court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

   c.   the court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the court.

The defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

      2.    **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the defendant shall retain the right to file a 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel.

## VIII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States probation office for use in preparing a presentence report. Failure to execute releases and provide information for the presentence report violates this agreement and relieves the government of its obligations in this agreement. Such failure and response by the government will not, however, constitute grounds for withdrawing the plea of guilty unless the government so requests. Providing materially false information will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1.

## IX. DISCLOSING FINANCIAL INFORMATION

The defendant agrees to disclose all of the defendant's assets and sources of income to the government, including all assets over which the defendant exercises or exercised direct or indirect control, or in which the defendant has had any financial interest. The defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the government. The defendant agrees truthfully to complete a personal financial statement within fourteen days from the date the defendant signs this agreement. If the government provides a financial statement to be completed, the defendant agrees to complete the financial statement truthfully and accurately within fourteen days from the date the defendant signs this agreement or the date the financial statement is provided to the defendant or counsel, whichever is later. The defendant agrees to provide updates with any material changes in circumstances, as described in

18 U.S.C. § 3664(k) within seven days of the event giving rise to the changed circumstances. The failure timely and accurately to complete, sign, and update the financial statements as required herein, may constitute failure to accept responsibility under USSG § 3E1.1, as well as other things.

The defendant authorizes the government: (a) to obtain a credit report on the defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain financial records related to the defendant.

Before sentencing, defendant agrees not to dissipate any assets without the consent of both the government's financial litigation unit and the asset forfeiture unit. If any assets are sold, any sale proceeds received from sale of assets will be deposited with the clerk and, upon sentencing, paid toward any monetary penalties due as ordered in the judgment.

## X.   NO RIGHT TO WITHDRAW PLEA

The defendant understands that the court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this agreement or the guilty plea, regardless of the court's actions.

## XI.  CONSEQUENCES OF VIOLATING AGREEMENT

**A.    Government's Options.** If the defendant fails to keep any promise in this agreement or commits a new crime, the government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice. In addition, if the government determines after sentence is imposed that the defendant's breach of the agreement warrants further prosecution, the government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the

government determines that a breach warrants prosecution before sentencing, it may withdraw from the agreement in its entirety.

The government's election to pursue any of the above options cannot be a basis for the defendant to withdraw the guilty plea(s) made pursuant to this agreement.

  **B.** **Defendant's Waiver of Rights.** If the defendant fails to keep any promise made in this agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the defendant does not enter an acceptable plea, the government will move to continue the trial now set to allow the government adequate time to prepare. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XII. MISCELLANEOUS

  **A.** **No Other Terms.** This agreement is the complete understanding between the parties, and no other promises have been made by the government to the defendant or to the attorney for the defendant. This agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does not bind or obligate governmental entities other than that specified as the government in this agreement (i.e., the United States Attorney's Office for the District of Idaho). The government

will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the request of defendant' or counsel.

      **B.**    **Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the defendant's notification of acceptance of this agreement no later than 5:00 p.m. on October 6, 2010.

      **C.**    **Risk of Removal from the United States.** The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however. While arguments may be made in such a proceeding, it is virtually certain that defendant will be removed from the United States. The defendant nevertheless affirms that the defendant wants to plead guilty.

## XIII. UNITED STATES' APPROVAL

I have reviewed this matter and the agreement. This agreement constitutes a formal plea offer from the government. Any oral discussions with the defendant and defense counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

BART M. DAVIS
UNITED STATES ATTORNEY
By:


_____        _10/5/17_____
RAYMOND E. PATRICCO
MELISSA Y. LOU                          Date
Assistants United States Attorney

## XIV. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this agreement with my attorney. I understand the agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the government, including any Assistant United States Attorney, concerning the plea to be entered in this case. I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including enter a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____   10-5-2017
JANE ROE                    Date
Defendant

    I have read this agreement and have discussed the contents of the agreement with my client. The agreement accurately sets forth the entirety of the agreement. I have conveyed all written offers from the government to the defendant pursuant to *Missouri v. Frye*, 132 S. Ct. 1399, 1408-09 (2012). I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States. I concur in my client's decision to plead guilty as set forth above.


_____   10-5-2017
ANNIE MCDEVITT              Date
Attorney for the Defendant


**Plea Agreement**            19            Rev. August 2017 (General)